UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------- X

NAGMELDEEN AZAZ,

        Petitioner,

    -against-

SUPERINTENDENT DALE ARTUS,

        Respondent.

-------------------------------- X

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

09-CV-03857 (KAM)(SMG)

**MATSUMOTO, United States District Judge:**

        Nagmeldeen Azaz ("petitioner") seeks a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, challenging his conviction in New York State court. (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet.").)

        On November 30, 2004, petitioner was sentenced to two consecutive indeterminate prison terms of twenty-five years to life following his conviction by a jury in Kings County, New York for the intentional murder of his wife, Joanne Thang, and the depraved indifference murder of his infant son, Najib Azaz. That conviction was affirmed on appeal before the Appellate Division, Second Department, *People v. Azaz*, 837 N.Y.S.2d 339 (N.Y. App. Div. 2d Dep't 2007), and the New York Court of Appeals, *People v. Azaz*, 10 N.Y.3d 873 (N.Y. 2008).

1

Petitioner presents four claims in his habeas petition: (i) the evidence adduced at trial was legally insufficient to convict him of the depraved indifference murder of Najib Azaz; (ii) the trial court issued an erroneous instruction during voir dire that violated his Fifth Amendment privilege against self-incrimination; (iii) prosecutorial misconduct and a biased interested witness charge deprived him of due process; and (iv) the trial court's imposition of consecutive sentences violated state law and his Sixth Amendment right to a jury trial.

The court referred this matter to Chief Magistrate Judge Steven M. Gold for a Report and Recommendation. On November 2, 2011, Chief Magistrate Judge Gold recommended that the instant petition be denied in full. (*See* ECF No. 14, Report and Recommendation ("R&R").) Petitioner filed timely objections to the R&R on December 7, 2011.[1] (*See* ECF No. 16, Objections to Report and Recommendation ("Obj.").) For the reasons discussed below, the court adopts Chief Magistrate Judge Gold's thorough and well-reasoned recommendations in full, and petitioner's habeas petition is denied.[2]

---

[1] Respondent did not file any objections or reply to petitioner's objections.

[2] Because the R&R provides a thorough recitation of the relevant facts underlying petitioner's convictions and the claims in his habeas petition (R&R at 2-10), such facts will not be repeated herein.

## STANDARD OF REVIEW

In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3). To the extent a party makes specific and timely written objections to a magistrate judge's findings and recommendations, the district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3).

Where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error." *Zaretsky v. Maxi-Aids, Inc.*, No. 10-CV-3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012) (internal quotation marks omitted); *accord Soley v. Wasserman*, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011); *see also Healing Power, Inc. v. Ace Cont'l Exps., Ltd.*, No. 07-CV-4175, 2008 WL 4693246, at *2 (E.D.N.Y. Oct. 17, 2008) (finding general objection to report and recommendation not specific enough to constitute an objection under Federal Rule of Civil Procedure 72(b)). Similarly, when a party makes no objection to a portion of a Report and

Recommendation, the court reviews that portion only for clear error on the face of the record. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *accord Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011).

In this case, petitioner has raised three objections to the R&R. First, petitioner does not contest the R&R's finding that his petition is untimely under AEDPA, but contends that it must be reviewed on the merits. (Obj. ¶¶ 6-11.) Because timeliness was raised *sua sponte* by Chief Magistrate Judge Gold, the R&R's finding on this issue is subject to de novo review. *See, e.g.*, *Bradley v. New York*, No. 07 Civ. 9466, 2008 WL 237222, at *1 (S.D.N.Y. Jan. 25, 2008) (conducting de novo review of petitioner's objection to magistrate judge's *sua sponte* dismissal of habeas petition as time-barred).

Second, petitioner argues that Chief Magistrate Judge Gold improperly concluded that the trial court's voir dire instruction did not violate petitioner's Fifth Amendment privilege against self-incrimination, as guaranteed to him at the state trial court level by the Fourteenth Amendment. (Obj. ¶¶ 12-15.) This objection essentially consists of two conclusory statements: (i) petitioner's "privilege against self-incrimination was in fact violated during the voir dire and such

4

violation could only be cured by a correct and detailed clarification of the instructions given" (*id.* ¶ 13); and (ii) juries carefully consider a judge's instructions and therefore a misleading instruction on a "vital issue" cannot be "cured by a prior unexceptionable and unilluminating [sic] abstract charge" (*id.* ¶ 14).  These two statements merely rehash petitioner's original argument that the trial court's second instruction on petitioner's privilege against self-incrimination was insufficient to cure the trial court's initial instruction during voir dire.  (ECF No. 2, Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet'r Mem.") at 27-28.)  As such, the portion of the R&R dealing with petitioner's self-incrimination claim only warrants clear error review.  *See Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375, 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) ("When a party simply reiterates the original arguments made to the magistrate judge, the Court will review the report strictly for clear error.").  In any event, under both clear error and de novo review of this issue, the court finds that the substance of the charge during voir dire did not violate petitioner's constitutional rights for the reasons stated below.

Third, petitioner contends that the prosecutor in this case violated his Fourteenth Amendment right to due process,

5

notwithstanding "overwhelming" evidence supporting the petitioner's conviction. (Obj. ¶ 17.) This argument directly contradicts Second Circuit authority holding that prosecutorial misconduct is not grounds for habeas corpus relief when "proof of [petitioner's] guilt is strong." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bessaha v. Rock*, No. 09-CV-3581, 2012 WL 1458195, at *17 (E.D.N.Y. Apr. 27, 2012) (finding that, even if prosecutor's comments were improper, petitioner was not entitled to habeas corpus relief because petitioner had "failed to show that his conviction was uncertain absent the challenged prosecutorial conduct"). Furthermore, petitioner cites only one Second Circuit case in support of this proposition: *United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978). *Quinto*, however, involved the direct review of a federal conviction, did not raise the specter of prosecutorial misconduct, and dealt solely with trial court error that was "not of constitutional dimension." *Id.* at 235. In short, petitioner has put forth a perfunctory legal argument in an attempt to have this court rehash petitioner's original arguments with respect to his prosecutorial misconduct claim. As such, this court is only obligated to engage in a clear error analysis of the R&R on this issue. *See Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should

review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (internal quotation marks omitted)). In any event, as with petitioner's second objection, this court would have reached the same result under a de novo review.

Petitioner has not objected to Chief Magistrate Judge Gold's other recommendations. As a result, these portions of the R&R are subject to clear error review. Notably, petitioner does not object to Chief Magistrate Judge Gold's determination that petitioner's first three substantive claims[3] are procedurally barred by petitioner's failure to satisfy New York's contemporaneous objection rule at the trial court level. (R&R at 14-15.) Nevertheless, the court finds that the same results would have been obtained under a de novo review of these issues.

---

[3] The claims are (i) insufficiency of the evidence with respect to depraved indifference murder, (ii) the trial court's violation of petitioner's privilege against self-incrimination, and (iii) due process violations due to prosecutorial misconduct and a biased interested witness charge.

## DISCUSSION

### I.    Timeliness of the Petition

AEDPA imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment.  28 U.S.C. § 2244(d)(1).  Pursuant to 28 U.S.C. § 2244(d)(1)(A), the limitations period begins to run from the date on which "the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The AEDPA statute of limitations is an affirmative defense, not a jurisdictional bar, and it is therefore the respondent's burden to plead it.  *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000).  Nevertheless, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."  *Day v. McDonough*, 547 U.S. 198, 209 (2006).  Before dismissing a habeas petition as time barred, however, a district court must "accord the parties fair notice and an opportunity to present their positions," and "determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred."  *Id.* at 210 (internal quotation marks omitted).  By finding that the instant petition was filed after AEDPA's one-year statute of limitations had expired and advising petitioner to submit objections to this finding, the R&R provided the

8

parties with the requisite fair notice and an opportunity to present their positions. (R&R at 11.)

The New York Court of Appeals affirmed petitioner's conviction on June 3, 2008. *Azaz,* 10 N.Y.3d at 874-75. This judgment became final ninety days later, on September 1, 2008, when the time to seek a writ of *certiorari* to the Supreme Court of the United States had expired. *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009). Accordingly, the statute of limitations on seeking habeas relief expired on September 2, 2009, two days before the instant petition was filed on September 4, 2009, and the petition is therefore untimely.

Although petitioner does not contest the R&R's finding that his petition is untimely, he objects on the ground that "the merits of a claim must be analyzed even if the petition is untimely." (Obj. ¶ 9 (citing *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004)).) Petitioner's citation to *Menefee*, however, is unavailing because in that case the Second Circuit held that, where a petitioner asserts his or her actual innocence, a district court faced with an untimely petition should determine, *inter alia*, whether a credible showing of actual innocence provides a basis for equitable tolling of the statute of limitations. *Menefee*, 391 F.3d at 161. Here, petitioner has

9

not made a claim of actual innocence, and thus *Menefee* does not apply.

Despite the fact that the petition is time-barred, the court will nonetheless address the merits of petitioner's claims. *See, e.g.*, *Rosario v. Bennett*, No. 01 Civ. 7142, 2003 WL 151988, at *2-3 (S.D.N.Y. Jan. 21, 2003) (denying habeas petition on the merits, notwithstanding that it was filed three days after the expiration of AEDPA's statute of limitations).

## II. Exhaustion

Chief Magistrate Judge Gold found that petitioner exhausted his state court remedies as to all claims presented in his petition (R&R at 11-13), as required by AEDPA, *see* 28 U.S.C. § 2254(b)(1). Because the court finds no clear error in the R&R's finding that petitioner's claims are exhausted – a point which no party contests – the court adopts this recommendation and finds that petitioner has properly exhausted all of the claims currently before the court.

## III. Procedural Bars

As discussed above, Chief Magistrate Judge Gold found that three of petitioner's four habeas claims were procedurally barred by New York State's codified contemporaneous objection rule, "which preserves for review only those questions of law as to which 'a protest . . . was registered, by the party claiming

10

error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) (quoting N.Y. Crim. Proc. Law § 470.05). No party has objected to the R&R's finding that petitioner's claims are procedurally barred, and the court finds no clear error in this determination. Accordingly, the court adopts Chief Magistrate Judge Gold's recommendation and finds that petitioner's legal sufficiency, self-incrimination, and due process claims are procedurally barred.

As correctly recognized by Chief Magistrate Judge Gold (R&R at 13), the Second Circuit has consistently held that New York's contemporaneous objection rule is an "established and regularly followed" procedural rule that constitutes an independent state ground for denying a habeas petitioner's federal claims. *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011), *cert. denied sub nom. Downs v. Bellnier*, 132 S. Ct. 2439 (2012); *accord Garcia*, 188 F.3d at 79. Following *Lee v. Kemna*, however, this court must determine whether the *particular* application of New York's contemporaneous objection rule in this case was "exorbitant." 534 U.S. 362, 376 (2002). A finding of exorbitance would render the contemporaneous objection rule inadequate to bar petitioner's habeas claims. *Id.* The Second

Circuit has established the following "guideposts" to determine whether a particular application of a state procedural rule is exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

The court does not find that the application of the contemporaneous objection rule in this case is exorbitant. With respect to petitioner's first claim, that there was insufficient evidence to convict him of depraved indifference murder, the state appellate court's application of the contemporaneous objection rule was clearly not exorbitant because the issue was never raised by petitioner at the trial court level.[4]  *See Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007).  The same holds true for two parts of petitioner's third claim; namely, that he

---

[4]  Although petitioner did move to dismiss the depraved indifference count at the end of trial, this motion was conclusory, offered no legal or evidentiary support, and certainly did not imply the arguments currently presented by petitioner.  (Tr. at 625-28.)

was deprived of due process because (i) the prosecutor's summation comments constituted misconduct and (ii) the trial court's interested witness charge was erroneous and targeted petitioner's expert psychiatric witness. Petitioner never raised these issues at the trial court level. (*See* Trial Transcript ("Tr.") at 683-710, 717-20, 735-36.) As a result, barring these issues from habeas consideration would not constitute an exorbitant application of New York's contemporaneous objection rule.

Petitioner did, however, lodge objections against: (i) the court's voir dire instruction on petitioner's privilege against self-incrimination, and (ii) the prosecutor's cross-examination of petitioner's expert psychiatric witness. The court then provided curative measures in response to both of these objections, and petitioner accepted these curative measures without further objections.

Federal courts have consistently barred habeas claims where the trial court issued curative instructions and petitioner failed to seek further relief. *Montalvo v. Annetts*, No. 02 Civ. 1056, 2003 WL 22962504, at *21 (S.D.N.Y. Dec. 17, 2003) ("[H]abeas claim still is unpreserved for habeas review, since the trial judge gave the requested instruction and defense counsel failed to object to the curative instruction."); *Gurley*

*v. Lemke*, No. 07 CV 10942, 2011 WL 4436617, at \*6 (S.D.N.Y. Jan. 13, 2011) (Report and Recommendation) ("Under New York law, in order to preserve a claim of prosecutorial misconduct for appellate review, defense counsel is required to make a specific objection at trial, and, if his objections are sustained, to seek further relief."), *adopted by* 2011 WL 4442910 (S.D.N.Y. Sept. 23, 2011).

Furthermore, barring a claim on these grounds (i.e., failing to object to a curative instruction) is not exorbitant pursuant to the three *Lee* guideposts. *See Cotto*, 331 F.3d at 240. First, objecting to the trial court's curative instructions would have given the court an opportunity to fashion a different curative measure. *See Gurley*, 2011 WL 4436617, at \*7. Second, New York case law indicates that compliance with the contemporaneous objection rule was required under these particular circumstances. *People v. Liverpool*, 554 N.Y.S.2d 326, 328 (N.Y. App. Div. 2d Dep't 1990) ("In those instances in which objections were interposed and sustained, no further relief or curative instructions were requested, nor was a motion for a mistrial made, so that the court must be deemed to have corrected the errors to the defendant's satisfaction and any further claims of error are unpreserved."). Finally, petitioner failed to comply with the contemporaneous objection

rule, as he did not lodge any protests to the trial court's curative instructions. *See Gurley*, 2011 WL 4436617, at *7.

Alternatively, a claim that has been denied review in state court due to a procedural default could warrant federal habeas review upon a showing of cause for the default and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *accord Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010). To establish cause, a petitioner may show "'that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Logan v. Ercole*, No. 08-CV-407, 2008 WL 2097439, at *4 (E.D.N.Y. May 20, 2008) (alterations in original) (quoting *Coleman*, 501 U.S. at 753). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Petitioner does not offer cause for his procedural default and therefore cannot satisfy the requirements of *Coleman* to avoid the procedural bar to his legal sufficiency, self-incrimination, and due process claims. *See Garcia*, 188 F.3d at

76 (stating that the *Coleman* "exception obtains only if the petitioner demonstrates both good cause for *and* actual prejudice" (emphasis added)).

Accordingly, because even on a de novo review the court finds no error with Chief Magistrate Judge Gold's well-grounded recommendation on this issue, the court adopts Chief Magistrate Judge Gold's finding that petitioner's legal sufficiency, self-incrimination, and due process claims are procedurally barred from habeas review.

## IV.  Substantive Habeas Corpus Claims

Chief Magistrate Judge Gold recommended that each of petitioner's habeas claims be denied on the merits.  Each of the claims will be discussed in turn.[5]

---

[5]  As recognized by Chief Magistrate Judge Gold, AEDPA established a deferential standard that federal courts must apply in reviewing state court decisions on habeas claims.  (*See* R&R at 15-16.)  Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct," and the habeas petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**A. The Government's Evidence was Sufficient to Convict Petitioner of Depraved Indifference Murder**

Petitioner contends that his conviction under New York Penal Law ("NYPL") § 125.25(2) for the depraved indifference murder of his infant son was not supported by legally sufficient evidence, and that he was consequently denied his Fourteenth Amendment right to due process. Petitioner presents three arguments in support of this contention: (i) New York law does not permit a defendant to be convicted for both depraved indifference and intentional murder for homicides stemming from the same criminal transaction; (ii) because the evidence adduced at trial supported a finding of transferred intent murder, petitioner could not be convicted of depraved indifference murder; and (iii) there was insufficient evidence to convict petitioner of depraved indifference murder. (Pet'r Mem. at 20-25.)

Chief Magistrate Judge Gold specifically addressed each of these arguments and found them meritless. Because petitioner did not object to any of Chief Magistrate Judge Gold's findings on this claim, the court reviews the findings for clear error. Even on a de novo review, however, and for substantially the same reasons as the R&R (*see* R&R at 16-22), the court adopts Chief Magistrate Judge Gold's recommendation

and finds that petitioner's conviction for the depraved indifference murder of his infant son is legally sufficient.

**B.    Voir Dire Instruction Did Not Violate Petitioner's Privilege Against Self-Incrimination**

Chief Magistrate Judge Gold found meritless petitioner's claim that the voir dire instruction violated his privilege against self-incrimination.  (R&R at 22-25.)  For the reasons stated above, despite petitioner's objections, the court need only review Chief Magistrate Judge Gold's recommendation for clear error.  Even under a de novo review, however, the court adopts Chief Magistrate Judge Gold's recommendation and denies petitioner's self-incrimination claim.

During voir dire, the trial court issued an unrequested instruction explaining petitioner's Fifth Amendment privilege against self-incrimination:

> If [petitioner] doesn't take the stand, you can't assume he is hiding something or any other thing.  You must give him his rights that the Constitution gives him not to testify against himself.

(Tr. at 158.)  The court's instruction deviated materially from New York's statutory language on a defendant's privilege against self-incrimination, which provides in relevant part that "the fact that [defendant] did not testify is not a factor from which any inference unfavorable to the defendant may be drawn."  N.Y. Crim. Proc. Law § 300.10(2).  The crux of petitioner's argument

is that the phrase "testify *against* himself" (Tr. 158) (emphasis added) implied that anything petitioner said on the stand would only underscore his guilt.  Three members of the voir dire panel that heard the erroneous instruction eventually sat on the jury that convicted petitioner.  (Pet'r Mem. at 28.)

Although petitioner correctly argues (Pet'r Mem. at 26) that New York courts are generally obligated to follow the verbatim language of New York Criminal Procedure Law ("NYCPL") § 300.10(2) when instructing jury members on a defendant's privilege against self-incrimination, *People v. Webb*, 215 A.D.2d 704, 705 (N.Y. App. Div. 2d Dep't 1995), the bar for attaining habeas relief based on an erroneous jury instruction is significantly higher.  In *Cupp v. Naughten*, the Supreme Court held that:

> Before a federal court may overturn a conviction resulting from a state trial in which [a challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.
>
> In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.

19

414 U.S. 141, 146-47 (1973) (internal quotation marks omitted).

Within the Second Circuit, courts have applied the *Cupp* standard

to determine whether an allegedly erroneous voir dire

instruction warrants habeas relief. *Gomez-Kadawid v.*

*Kirkpatrick,* No. 08 Civ. 5819, 2011 WL 2581838, at *7 (S.D.N.Y.

May 5, 2011) (Report and Recommendation) ("Although [the *Cupp*]

standard is generally used for jury instructions, this standard

has also been applied to comments made during *voir dire.*"),

*adopted by* 2011 WL 2581835 (S.D.N.Y. June 29, 2011); *Jimenez v.*

*Walker*, No. 00-CV-3599, 2003 WL 22952842, at *12-13 (E.D.N.Y.

Nov. 4, 2003) (applying *Cupp* standard in holding that allegedly

erroneous voir dire instructions by a state court did not

violate defendant's due process rights), *aff'd*, 458 F.3d 130 (2d

Cir. 2006).[6]

Even assuming that the trial court's instruction was

in fact erroneous under New York law,[7] it certainly did not

---

[6] *See also McKnight v. Superintendent, Attica Corr. Facility*, No.
09-CV-6168T, 2011 WL 1362672, at *9 (W.D.N.Y. Apr. 11, 2011) (applying *Cupp*
standard to habeas petitioner's claim that trial court violated NYCPL
§§ 270.40 and 300.10(2) by waiting until after summations to deliver
instruction on self-incrimination rather than giving instruction at the
outset of trial).

[7] Although *Webb* urged trial courts to follow the verbatim
language of NYCPL § 300.10(2), it held that the particular deviation in that
case was too inconsequential to warrant relief. 215 A.D.2d at 705. Because
of this court's disposition of this claim, the court need not decide whether
the deviation in this case was sufficiently significant under New York law to
warrant relief.

violate petitioner's Fourteenth Amendment right to due process.
In the habeas context, a jury instruction sufficiently conveys a
defendant's right against self-incrimination, and thereby
satisfies due process, when it: (a) correctly indicates that the
Fifth Amendment "grants a criminal defendant the right not to
testify at trial"; and (b) "also precludes a jury from drawing
an adverse inference from the defendant's exercise of this
right." *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir.
1992). Chief Magistrate Judge Gold correctly found that the
trial court's instruction properly conveyed that petitioner had
a constitutional right "not to testify," and that the jury
"can't assume" anything from petitioner's decision to not take
the stand. (Tr. at 158.) The alleged implications stemming
from the phrase "testify *against* himself" (*id.*) (emphasis added)
are insufficient to render the jury instruction
unconstitutional.[8]

Furthermore, the allegedly erroneous voir dire
instruction here was followed by an instruction before the jury
began its deliberations affirming that "[t]he fact that the
defendant did not testify is not a factor from which any

---

[8] As Magistrate Judge Gold correctly noted, in *the Jimenez* case*,*
the trial court preceded its voir dire instruction on self-incrimination by
questioning whether the jury would assume that a defendant was "hiding
something" if he did not take the stand. 2003 WL 22952842, at *11-12. The
*Jiminez* court found that the actual instruction, like here, which indicated
that no adverse inferences could be drawn from defendant's silence, was
constitutionally sufficient. *Id.*

inference unfavorable to him may be drawn." (Tr. at 720.) Generally, "the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 146. A curative instruction can remedy an allegedly erroneous instruction given by the court earlier in the trial. *See Middleton v. McNeil*, 541 U.S. 433, 438 (2004) ("Given three correct instructions and one contrary one, the state court did not unreasonably apply federal law when it found that there was no reasonable likelihood the jury was misled."); *Cupp*, 414 U.S. at 147 (finding that erroneous instruction on the "presumption of truthfulness" of witnesses did not by itself violate due process where trial court gave two subsequent instructions affirming the presumption of innocence and the reasonable doubt burden on the government); *Andrews v. LeClaire*, 709 F. Supp. 2d 269, 276-77 (S.D.N.Y. 2010) (charging potential jury members during voir dire with elements of the alleged crime did not rise to the level of a constitutional violation where the court subsequently urged the jury to keep an open mind and to not deliberate prematurely). Moreover, juries are presumed to follow the instructions given to them. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S.

200, 211 (1987)).  Accordingly, under these circumstances, the
court cannot conclude that "the ailing instruction by itself so
infected the entire trial that the resulting conviction violates
due process," *Cupp*, 414 U.S. at 147, and thus the court adopts
Chief Magistrate Judge Gold's recommendation that this claim be
denied.

**C.  Alleged Due Process Violations**

*1.  Prosecutor's Cross-Examination and Summation Did
Not Constitute Prosecutorial Misconduct*

Petitioner contends that the prosecutor in this case
engaged in constitutionally significant misconduct.  First,
during cross-examination, the prosecutor asked petitioner's
expert psychiatric witness about his fee, allegedly "creating
the misimpression that money was no object and the defense had
bought an expert."  (Pet'r Mem. at 30.)  Subsequently, the
prosecutor asked the petitioner's expert witness about another,
non-testifying expert who had been retained by the defense with
respect to an unrelated matter.  (*Id*. at 31.)  The trial court
sustained petitioner's objections to both of these questions and
issued curative instructions to which petitioner acquiesced.
(Tr. at 527-29, 543-45.)  Finally, during summation, the
prosecutor allegedly accused petitioner's expert witness of
dishonesty.  (Pet'r Mem. at 32.)  Chief Magistrate Judge Gold
found all of these claims to be meritless.  As indicated above,

despite petitioner's objections, the court need only review petitioner's prosecutorial misconduct claims for clear error. Even under a de novo review, however, the court adopts Chief Magistrate Judge Gold's recommendation and denies the claims.

To succeed on a claim of prosecutorial misconduct within the habeas context, "it is not enough that the [prosecutor's] remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, "the relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation marks omitted). To determine whether the prosecutor's comments violated petitioner's right to due process, the court considers: (1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the prejudice caused by the misconduct, if any; and (3) the certainty of the conviction absent the improper conduct. *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998). The court must examine each instance of alleged misconduct "in the context of the entire trial." *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 639 (1974)).

Although the referenced cross-examination questions were improper, they were quickly cured by the trial court, were not repeated by the prosecutor, and therefore did not constitute a pattern of prosecutorial misconduct severe enough to warrant habeas relief.[9]  Furthermore, as Chief Magistrate Judge Gold correctly determined, nothing in the prosecutor's summation comments rose to the level of "egregious misconduct" warranting habeas relief.  *See Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir. 1990).  Even under the most critical reading of the record, at worst, the prosecutor insinuated that petitioner's expert witness was willfully blind to the evidence contradicting his testimony.  (*See, e.g.*, Tr. at 690.)  This appears to be a perfectly acceptable trial strategy in light of the record

---

[9] *See Greer v. Miller*, 483 U.S. 756, 766 (1987) ("The sequence of events in this case - a single question, an immediate objection, and two curative instructions - clearly indicates that the prosecutor's improper question did not violate [defendant's] due process rights" (footnote omitted)); *Blissett v. Lefevre*, 924 F.2d 434, 440-41 (2d Cir. 1991) (prosecutor's reference to defendant's "other crimes," despite the trial court's specific warning against doing so, did not constitute prosecutorial misconduct because the remark was isolated and not part of a pervasive trial strategy); *Crique v. Lee*, No. 10 Civ. 6942, 2012 WL 651435, at *3 (S.D.N.Y. Feb. 28, 2012) (insinuating impropriety by defense's expert psychiatric witness did not constitute prosecutorial misconduct when the question was withdrawn and the trial court issued curative instructions); *Salcedo v. Artuz*, 107 F. Supp. 2d 405, 416 (S.D.N.Y. 2000) (attacking credibility of expert psychiatric witness was not sufficiently severe to constitute prosecutorial misconduct); *see also Santiago v. Senkowski*, No. 03-CV-0080, 2004 WL 1646765, at *6 (E.D.N.Y. July 12, 2004) ("A single elicitation of hearsay, to which objection was sustained and curative instructions given at the jury charge . . . do[es] not form a sufficient pattern of serious misconduct warranting reversal.").

evidence contradicting petitioner's claim that he was acting

under an extreme emotional disturbance (e.g., petitioner's

attempt to clean the murder weapon and crime scene (Tr. at

703)). *See Parker v. Matthews*, 132 S. Ct. 2148, 2154-55 (2012)

(finding no due process violation when prosecutor (i) insinuated

that lawyer, psychiatrist, and petitioner were colluding with

respect to an extreme emotional disturbance defense and (ii)

denigrated the defense itself as a "last resort"). In any

event, the government is allotted "broad latitude" in its

summation comments, *United States v. Bautista*, 23 F.3d 726, 734

(2d Cir. 1994), and far more serious conduct at summation has

passed constitutional muster. *See, e.g.*, *Darden*, 477 U.S. at

180 (finding summation not violative of due process even though

the prosecutor referred to petitioner as an "animal" that should

be kept on a leash or shot with a shotgun).

Furthermore, as Chief Magistrate Judge Gold correctly

discerned, irrespective of the alleged prosecutorial misconduct,

petitioner's conviction for intentional and depraved

indifference murder was likely because the evidence adduced at

trial strongly suggested that petitioner had an orderly thought

process during the murders, and that he was consequently not

acting under an extreme emotional disturbance. (R&R at 28-29.)

Accordingly, because the alleged prosecutorial misconduct was

relatively benign, quickly cured, and inconsequential in light of the trial evidence contradicting a finding of extreme emotional disturbance, the court adopts Chief Magistrate Judge Gold's recommendation and finds that petitioner's claim of prosecutorial misconduct does not warrant habeas relief.

### 2. The Interested Witness Charge Was Proper

Petitioner contends that the trial court's interested witness charge violated due process. The court adopts Chief Magistrate Judge Gold's recommendation and denies this claim. As discussed above, in order to grant habeas relief based on an allegedly ailing jury instruction, the court must find that the instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. Essentially, petitioner argues that the trial court's interested witness charge singled out his expert psychiatric witness because it referred to any witness who was "financially, emotionally, or professionally involved with the case." (Tr. at 717.) As Chief Magistrate Judge Gold correctly determined, however, this charge applies equally to the government's witnesses, such as the law enforcement witnesses who had "professional" interests in the case, and petitioner's sister-in-law, who clearly had an "emotional" stake in the case. (R&R at 30.) Thus, the trial court's interested witness charge in no

way violated petitioner's due process rights and no habeas

relief is warranted.[10]

### D.   Consecutive Sentences

Finally, petitioner contends that his two consecutive

sentences of twenty-five years to life violated: (i) NYPL

§ 70.25(2), which provides that if two or more offenses are

committed by a single criminal act, the sentences for those

offenses must run concurrently; and (ii) *Apprendi v. New Jersey*,

530 U.S. 466, 490 (2000), which holds that "any fact that

increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury . . . ."  (Pet'r

Mem. at 35-36.)

---

[10] In addition to the two due process claims discussed above, petitioner intermittently presents an ineffective assistance of counsel claim.  Petitioner first argues the point in his memorandum of law — it was not raised in his actual habeas petition – contending that defense counsel's failure to adequately object to the prosecutor's alleged misconduct and the trial court's interested witness charge rendered defense counsel ineffective. (Pet'r Mem. at 34-35.)  Magistrate Judge Gold did not make a recommendation with respect to an ineffective assistance of counsel claim (R&R at 15 n.12), and although Petitioner references "ineffective assistance of counsel" in a header within his objection to the R&R (Obj. at 4), no actual objection on this basis was presented.  In any event, the court has reviewed the trial record and finds that defense counsel's representation certainly satisfied the objective standard of reasonableness set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984) for evaluating ineffective assistance claims.

Moreover, to the extent that petitioner argues that the trial court used incorrect *falsus in uno, falsus in omnibus* language in the context of the interested witness charge, Magistrate Judge Gold correctly determined that this argument does not present a federal issue that could warrant habeas relief.  *See Sims v. Blot*, 354 F. App'x 504, 506 (2d Cir. 2009) (summary order) ("This court has never held that giving [a *falsus in uno*] instruction constitutes error.").

First, with respect to NYPL § 70.25(2), a violation of state law does not ordinarily warrant habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Nevertheless, petitioner may be entitled to habeas relief for the trial court's alleged violation of NYPL § 70.25(2) if "the [trial] court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011). New York law, however, permits the imposition of consecutive sentences when two offenses result from the same transaction, but are caused by two separate physical acts. *People v. Brown*, 80 N.Y.2d 361, 364 (1992). Petitioner stabbed his wife seventeen times and his infant son twice; these stabbings are at least distinct acts under New York law. *See People v. Porter,* 681 N.Y.S.2d 348, 349 (N.Y. App. Div. 2d Dep't 1998) ("Although the murders occurred in the course of a single transaction, the firing of multiple shots at the victims constituted separate acts such that consecutive sentences were permissible."). Because the trial court's ruling was not "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington*, 131 S. Ct. at 786-87,

petitioner is not entitled to habeas relief for the trial court's alleged violation of NYPL § 70.25(2).

Second, petitioner's *Apprendi* claim is meritless for the reasons set forth by Chief Magistrate Judge Gold (R&R at 31-32), which relied upon the Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160, 168 (2009). *See Webb v. Walsh*, No. 07-CV-2655 (ENV), 2010 WL 2985879, at *6 (E.D.N.Y. July 23, 2010) (finding that petitioner's *Apprendi* claim with respect to a New York trial court's imposition of consecutive sentences was foreclosed by *Ice*). Accordingly, the court adopts Chief Magistrate Judge Gold's recommendation and denies petitioner's sentencing claim in full.

## CONCLUSION

For the reasons set forth above, Chief Magistrate Judge Gold's thorough and well-reasoned Report and Recommendation is adopted in full, and the instant petition for a writ of habeas corpus is denied. The Clerk of Court is respectfully requested to enter judgment in favor of respondent and close this case.

**SO ORDERED.**

Dated:     Brooklyn, New York
           October 19, 2012

                                        /s/
                              _____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York

30